Mr. Chief Justice Marshall
delivered the opinion of the court, and after stating e facts, proceeded as follows:
The appellants contend, 1st. That the sentence pronounced by the district court in August, 1814, which was affirmed by the circuit coúrt in May, 1815, ■condemned finally, the- packages for which a decree ■of restitution was afterwards made, and that the subsequent proceedings were irregular, and in a case not before the court. 2dly., That upon the merits, farther proof ought not to haxe been ordered, and a condemnation ought to have taken place.
On the first point, it is contended, that these goods, having been comprehended in’ invoices not endorsed, nor accompanied with letters of advice, are within the very terms of the sentence of condemnation, and must, consequently, be considered as condemned.
The principle on which this argument was overruled in the court below, is to be found in its sentence. The district court, in its decree of 1814, did not intend to confine its description of the’property condemned, to the general terms used iñ thaCdecree, but did intend to enumerate the particular bills to which those *46 terms should apply. This is conclusively proved, by reference to the subsequent intended enumeration, which is followed by a blank, obviously left for that enumeration. ' Had the enumeration been inserted as was intended, the particular specification, would undoubtedly have controlled the general description which refers to it. The unintentional and accidental omission to fill this blank, leaves the decree imperfect in a very essen.fjal point ; and if the case, and the whole context of the decree can satifactorily supply this defect, it ought to be ¡Supplied. This court is of opinion,' that no doubt can be entertained respecting the bills with which the district court intended to ,fill up the blank. The condemnation of shipments evidenced by bills of lading, with blank endorsements, or without endorsement, could apply to those only which required éndorsement, or which were in a situation to admit of it. These wrere the bills which were made deliverable to shipper, or to the .order of the shipper. Bills addressed to a merchant, residing in Lisbon, could not be endorsed by such merchant, until the vessel carrying- them should arrive at Lisbon. Consequently, such hills could not be in the view of the judge, when condemning goods, because the bills of lading, were not endorsed; and, had he completed his decree, such bills could have been inserted- in it. No conceivable reason exists, for admitting to farther proof, the case of a shipment, evidenced by a bill of lading, made deliverable to shipper, or order, and endorsed to a merchant, residing in Lisbon ; and at the same time Condemning, without admitting to farther proof, the same shipment, if evidenced by a bill- of lading, *47 made deliverable, in the first instance, to the Lisbon merchant. N.o. 108, for example, is made deliverable at Lisbon, to Seguior Jose Ramos de Fonseco, and is consequently not endorsed. It is contended, that these goods are not condemned. Blit had the bill been made deliverable, to shipper, or order, and endorsed to Segnior Jose Ramos de Fonseco, farther proof would have been admitted.
Nothing but absolute necessity could sustain a construction, so obviously absurd. This court is unanimously of opinion, that justice ought not to be diverted from its plain course, by circumstances so susceptible of explanation, that error is impossible; and that, when the decree was returned to the district, court of North Carolina, with the blank unfilled, that court did right in considering the specification intended to have been inserted, and for which the blank was left, as a substantive and essential part of the decree; still capable of being supplied, and in acting upon, and explaining the decree, as if that specification had been originally inserted.
This impediment being removed, the cause will be considered on its merits.
It is contended, with great earnestness, that farther proof ought not to have been ordered, and that the goods which have been restored, ought to have been condemned as prize of war. In support of this proposition, the captors, by their counsel, insist- that the rights of belligerents would be sacrificed, should a mere bill of lading, consigning the goods to a neutral, unac *48 companied by letter of advice or invoice, let in thé neoc^a’Eaant farther proof,
, ding, paniT b°yTñ mvoice or ter of adrice, foundation* for tlon of*farther proof.
Effect-of..ie . suspicion or proof of spoli» ation of papers. by. the enemy clohn^f*neuconducting*^nafida.
It is not pretended, that such a bill would of itself justify an 'order for restitution : but it certainly gives person to whom it is addressed, a right to- receive goods and lays the foundation for proof, that the ProPerty is in him. It c.annot be believed, that, admit-farther proof in the aps'ence of an invoice qr letter ... , , ... advice, endangers the fair rights of belligerents. These papers are so easily prepared, that no frauducase would be without them'. It is not to be credited, that a shipper in Londdn, consigning his own. goods to a merchant in Lisbon,, with the intention of passing them on a belligerent cruizer -as neutral, would, omit to furnish a letter of advic.e and invoice, adapted to the occasion. There might be double papers, but it is not to be imagined, that papers so easily 'framed, would'not be prepared in a case of intended deception.
jf(. jg unquestionably extraordinary, that the same * J J1 vessel which carries the goods should not also carry CT . invoices, and letters of advice. But the inference which the counsel for the captors would draw from facL does not seem to be warranted by it. It might induce a suspicion, that papers had been’thrown overboard ; but in the total absence of evidence, that this fact had occurred, the court would not be justified in coming positively to such a conclusion. Between London and Lisbon, where the -voyage is short and the packets regular, the bills of lading and invoices might be s.ent by regular conveyances. But were it even admitted that a belligerent master carrying a *49 cargo chi.efly belligerent, bad thrown papers overboard, this fact ought not to preclude a neutral claimant, to whom no fraud is imputable, from exhibiting proof of property. In the case before the court, no attémpt was made to disguise any part of the cargo. By far the greater portion of it was confessedly British', and was condemned without a claim. The whole transaction with respect to tir*f cargo, is plain and open; and was, in the opinion of this court, a clear case for farther ptoof.
The farther proof in the*claims 108, 109, 141, and 122, consists of affidavits to' the proprietary interestof the claimants; of copies of letters, in some instances ordering the goods, and in others advising of their shipment; and of copies of invoices — all properly authenticated. This proof was .satisfactory,.and. the order for restitution madé upon it was the necessary consequence of its admission.a
*50 In the claim to No. 118, made for Joseph Winn, the Pro°f was not so conclusive. It consisted oí the affidavit of the claimant to his proprietary in' terest, and to his character as .a domiciled Portuguese subject, residing and carrying on trade in Lisbon. The. affidavit was made in London oh the 29th day of June, 1815, hut states the claimant to have been at his -fixed place of residence in Lisbon, at the time of the capture, where he had resided for several years preceding that event, and where he continued until the 12th of June, 18l4, when he left- *51 L isbon for Bordeaux, and has since, arrived in London on mercantile business. That he is still a domiciled subject of Portugal, intending to rfeturn to Lisbon, where his commercial establishment is maintained, and his business carried on by his clerks until his return. To a copy of this affidavit is annexed that of Duncan M‘Andrew, his clerk, made in Lisbon, who verifies all the facts stated in it.
há^Tneudoí'1™’1 itdob“ tive country afterwards amino revertendi, and leaving bis commercial establishment robe carried on by bis clerks in bis absence.
This property vas also restored by the sentence of the.district court, and affirmed in the circuit court. On an appeal being prayed, the circuit court made an order, allowing this claimant to take farther proof to be offered to this court- The proof offered under this order consists of a special affidavit of one of the shippers of sworn copies of letters, ordering the shipment, and of the invoice of the articles shipped-. •
. This claim not having been attended^ when the sentence of restitution was made, with 'any suspicious [circumstances, other than the absence of papers which have since- been supplied, and which was probably the result solely of inadverte nce, this court is of opinion, that the farther proof now offered, ought to be received. It certainly dissipates every doubt respecting the proprietary interest. The only question made upon it respects the neutral character of the claimant.
It has been urged, that his native character easily ’ reverts, and that by returning to his native country, the claimant has become a. redintegrated British sub *52 ject. But his commercial establishment in Lisbon still rema^ns 5 his■ mercantile affairs are conducted in. his absence by his clerks; he was himself in Lisbon at the time of the capturé ; he has conáe to London merely on mercantile business, and intends returning to Lisbon. Under these circumstances,- hiá Portuguese domicil still continues.
British subjGcts residefit on Portugal do notretain their native characthat UtofCqUthe they reside*'re
. But it is contended, that the connection between Britain and, Portugal retains the British character, and the counsel for the captors has. enumerated the privileges of 'Englishmen in that country.
There privileges are certainly very great; but, ^ # without giving them a minute and separate examina- . • . ,7 . . ; . ,, ,, , ,. , tion, it may be .said, generally, that they do not confound the British and Portuguese ■ character. They do' 11 °^' identify' the.twó nations with each- other, or effect those principles on which, in other cases, a merchant acquires the .character of the nation in-which he resides and carries on his trade.. If a Brittish pierchant,- residing in Portugal,’ retains his'British character when Britain is at war and Portugal at peace, he would also' retain that character when Portugal is at war and Britain at peace. This no belligerent could tolerate. .Its effect would be to neutralize the whole commerce.of Portugal, and give it perfect security:
Sentence affirmed.

 M Bomemant in his commentary upon Be Habreu, makes' the following remarks:
Parmi les pieces dont un navire doit etre pourvu pour la regulante dé sa navigation,il en est de deux sortes; les unes seryent a prouver la neutralite du navire, les autres oel!e de la cai-gáison.”
. Celles relatives a la carga.ison sont les connoissments, les polices de chargemont, lea factures.' Toutes ces pieces font pleine et entiere foi, si elles sont en bonne et due forme. Toute ne sont pasd’absolue necessite; comma elles sont correlatives, elles se suppleent entré -elle et peüvent etre supplees par d’autres equi. valentes. Mais si l’on en de- ■ coUvre d’autres qui les dementent, s’il se rencontre des dou- . ble expeditions on autres documens capable d’ebrariler la con fiancé, la presomption defraude se change des-lors en certitude', on ne presume pas simplement le navire ennemi, on le suppose.
“ La preuve de la neutra *50 lité est toujours a la charge du capture.
“ Cette preuve ne peut et ne doit resulter que des paers trouves a bord;(1) toute aútre indirect© ne peut etre reque ni pour ni contre,. c’est la disposition de l’art. 11. du, reglement du 26 Juillet, 1773, et des precedens qui veulent qu’on n’ait egard qu’aux pieces trouvees a bord, et non a celles - qui pourroient etre produites apres la prise.
“ C’estau captéur a prouver ensuite Virregularite des pieces a les discuter- de la maniere qu’il juge convenable pouren demontrer la fraude et la simulation.
“Quant auxirregularitesque - peuvent contenir certaine piecés de bord, ce ri’est pas a des omissions de forme usitees que les tribuuaux doivent s’attacher c’est par 1’ensemble des pieces, et surtout par la verite des choses qui en resulte, qu’ils doivent se determiner; 1’ex-perience n’a que trop demontre que la plus grande regulante dans les pápiers mas quoit sou-Vent- la fraude etla simulation, nimia precautio dolus.” BonnemanVs Translation of de Hqbreu, Tom. 1. p. 28.

 The french prize praoliee not allowing farther proof, but acquitting or condemning upon the original evidence consisting of, the papers found on board -and the depositions of the captors and captured. The only exception to this rule is, where the papers have been spoliated by the captors, or los.t by shipwreck, and other inevitable accidents. Valin, Traite des Prises, ch. 15. n. 7. But the Spanish law admits of farther proof in the case of doubts arising upon the original, evidence. De Habreu part 2. ch. 15.